UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ADAM DEJESUS,                          :
      Plaintiff,                     :
                                :
      v.                             :   Case No. 3:21cv754 (MPS)
                                :
JEFFREY SCHAMALING, ET AL.,            :
      Defendants.                    :

**<u>INITIAL REVIEW ORDER</u>**

The plaintiff, Adam DeJesus, is currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut.  He has filed a complaint under 42 U.S.C. § 1983 against Waterbury Police Detectives Jeffrey Schamaling[1] and Eduardo Rivera, Captain Michael L. Ponzillo, and Sergeant Steven Lanese.  The plaintiff alleges that on August 24, 2019, Detectives Schamaling and Rivera used unnecessary force against him at the Waterbury Police Station.  For the reasons set forth below, the Court will dismiss the complaint in part and otherwise allow it to proceed.

I.      **Standard of Review**

The Court reviews the complaint under 28 U.S.C. § 1915A(b) which requires dismissal of "any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  *Id.*  In undertaking this review, the Court is obligated to "construe" complaints and amended complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and

---

[1] In the caption of the complaint, Detective Schamaling's last name is spelled Schamaling.  ECF No. 1 at 1.  In the description of parties and at times in the body of the complaint, however, the plaintiff spells Detective Schamaling's name as Schmaling.  *Id.* at 2, 5-6, 8, 10-13.

citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II.    Factual Allegations

At 12:15 p.m. on August 24, 2019, the plaintiff was in the kitchen on the second floor of a house located at 133 Griggs Street, Waterbury, Connecticut. ECF No. 1 at 5 ¶ 1. A barking dog and voices in the driveway prompted the plaintiff to walk to the front room and look out the window. *Id.* ¶¶ 1-2. The plaintiff observed police officers in front of the house. *Id.* ¶¶ 1-2. The plaintiff walked down to the first floor, exited the house through the front door onto the porch, and, with his hands in the air, walked to bottom of the porch stairs. *Id.* ¶ 3. A Waterbury Police Officer pointed a taser gun at the plaintiff and ordered him to lay on the ground. *Id.* ¶¶ 3-4. The plaintiff complied with the order. *Id.* ¶ 4. Officers then dragged the plaintiff up onto the porch, placed his hands behind his back, applied handcuffs to his wrists, and arrested him. *Id.* at 5-6 ¶ 4.

As soon as the officers lifted the plaintiff to a standing position, Detective Schamaling

rushed over, asked the plaintiff where his car was located, and threatened to knock the plaintiff's

teeth out if he refused to disclose the location of the car. *Id.*at 6 ¶ 5. The plaintiff stated that his

car was parked on a street off Griggs Street. *Id.* ¶ 6.  Detective Schamaling and other officers at

the scene placed the plaintiff in the back seat of a police vehicle and transported him to the

Waterbury Police Department. *Id.* Upon arrival at the station, Detective Schamaling and an

unidentified police officer escorted the plaintiff to a holding cell. *Id.* ¶¶ 7-8.  Fifteen minutes

later, Detective Schamaling and another unidentified detective escorted the plaintiff from the

holding cell to a locker room in the police station. *Id.* ¶ 8.

A short detective with a long beard and a hat, who the plaintiff later learned was Eduardo

Rivera, stood in front of the plaintiff, Detective Schamaling stood to the right of the plaintiff, and

both detectives asked the plaintiff about an incident that had occurred at 5:30 a.m. that day. *Id.* ¶

9.  The plaintiff looked at Detective Schamaling and stated that he had already explained what

had happened earlier that day. *Id.* at 11 ¶ 10.  Detective Rivera then kicked the plaintiff in the

stomach causing him to fall backward and land in a chair. *Id.* As he gasped for air, the plaintiff

told Detective Rivera to "stop." *Id.* ¶ 11.  Detective Rivera asked the plaintiff if he liked to hurt

police officers. *Id.* The plaintiff responded that he did not know that the individual was a police

officer. *Id.* Detective Schamaling punched the plaintiff in the right eye causing a laceration that

began to bleed. *Id.*

The plaintiff was unable to see clearly for a minute and placed his hands over his face

and eyes. *Id.* ¶ 12.  During the next five minutes, both detectives continued to question the

plaintiff and the plaintiff felt a hand slap his head and a foot kick his right leg. *Id.* at 12 ¶ 13.

The plaintiff was dizzy, scared, hurt, and confused. *Id.* At the conclusion of the interrogation,

Detective Schamaling escorted the plaintiff back to the holding cell. *Id.* ¶ 14.  During the escort, Schamaling threatened to make things worse if the plaintiff spilled blood on him or on the floor. *Id.*

Shortly after escorting the plaintiff to a holding cell, Detective Schamaling escorted the plaintiff to his office.  *Id.* ¶ 15. Another detective, who had been in the locker room when Detectives Schamaling and Rivera had assaulted the plaintiff, was present in Detective Schamaling's office.  *Id.*  This unnamed detective handed the plaintiff a notice and waiver of rights form.  *Id.* ¶ 16.  The plaintiff placed his initials next to several statements that explained his rights but then stopped initializing the form because he did not feel well. *Id.* at 13 ¶ 17.  He asked for something to put over his right eye because it was bleeding and that he be sent to the hospital for treatment.  *Id.* The unnamed detective provided the plaintiff with some paper towels, informed the plaintiff that an ambulance was on the way, and asked the plaintiff if he intended to initial the rest of the statements listed on the notice and waiver of rights form.  *Id.* ¶ 18.  The plaintiff responded that he would not initial the remaining rights on the form until his attorney was present.  *Id.* ¶ 19.  The unnamed detective walked out of the office but returned fifteen minutes later to announce that the ambulance had arrived.  *Id.*

Detective Schamaling and two other detectives escorted the plaintiff to the ambulance and a police officer accompanied the plaintiff in the ambulance to Waterbury Hospital.  *Id.* at 13-14 ¶¶ 20-21.  The plaintiff underwent a CT scan, a chest x-ray, and bloodwork, and a medical provider used six sutures to close the laceration near the plaintiff's right eye.  *Id.* at 14 ¶ 24; at 17-18.  A physician discharged the plaintiff to the custody of the Waterbury Police officers and a sergeant, who drove the plaintiff back to the police station. *Id.* at 15 ¶¶ 25-26.  At the station, an

officer searched and photographed the plaintiff and the plaintiff signed "a docket" listing the criminal charges for which he had been arrested.  *Id.* ¶ 26.  The plaintiff remained in a holding cell at the station until Monday, August 26, 2019.  *Id.*

## IV.   Discussion

As an initial matter, the complaint is deficient because it does not include a request for relief of any kind as required by Fed. R. Civ. P. 8(a)(3).  Although the plaintiff does not articulate the specific claims he seeks to assert against the defendants, the Court liberally construes the allegations to assert a Fourth Amendment claim of excessive force.[2]

### A.   Detectives Schamaling and Rivera

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that "*all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach" derived from the Fourteenth Amendment.  *Id.* at 395.  The Court also noted that, at some point after an individual's arrest, the suspect's status changes from an arrestee to a pretrial detainee.  *See id.* at 395 n.10.

Here, the use of force occurred after arrest but before the plaintiff's arraignment.  The

---

[2]   The plaintiff does not include facts pertaining to the offenses for which he was arrested on August 24, 2019.  Nor does he contend that he was falsely arrested.  The State of Connecticut Judicial Branch website reflects that Waterbury police officers arrested the plaintiff on August 24, 2019 and charged him with multiple criminal and motor vehicle offenses that occurred on that date, including assault of public safety, emergency medical, public transit or health care personnel in violation of Connecticut General Statutes § 53a-167c.  *See State v. DeJesus*, Docket No. UWY-CR19-0485808-T; *State v. DeJesuss*, Docket No. UWY-MV19-0476408-T.  The plaintiff pleaded guilty to the assault charge.  *Id.*  Thus, the Court does not construe the complaint as raising a claim of false arrest under the Fourth Amendment.  Information pertaining to these criminal and motor vehicle cases may be found at: https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=b4765e5e-acf5-41e0-a32e-fd08177196f7; https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending&Key=ea3bc2bf-3a49-487a-87d8-6796601ecd27. (Last visited August 10, 2021).

Second Circuit has held that the Fourth Amendment standard for arrestees set forth in *Graham* is also applicable to an excessive force claim asserted by an arrestee who has not yet been arraigned. *See Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) ("[W]e decided long ago that the objective reasonableness standard established in *Graham* applies to actions taken with respect to a person who asserts, as does the plaintiff here, a claim for excessive force after she has been arrested and detained, but 'prior to the time when [she] is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer.'") (quoting *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989)).

In applying the reasonableness standard to an officer's use of force prior to arraignment, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner,* 471 U.S., at 8–9 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure")). A police officer's "underlying intent or motivation" is irrelevant in determining whether the force used was objectively unreasonable in view of the facts and circumstances confronting him or her. *Graham*, 490 U.S. at 397 (citation omitted).

The plaintiff alleges that Detective Schamaling brought him to a locker room at the Waterbury Police Station in handcuffs and questioned him about the incident that had occurred early that morning. During this interrogation, Detective Rivera allegedly kicked the plaintiff in the stomach, Detective Schamaling allegedly punched him in the right eye, and one or both detectives allegedly slapped his head and kicked his leg. The plaintiff suffered injuries that

required treatment at Waterbury hospital.  There are no facts to suggest that the plaintiff was a

flight risk or that he posed an imminent threat to the safety or security or any other police

personnel at the station.  The plaintiff has plausibly alleged that Detectives Schamaling and

Rivera used excessive force against him when they interrogated him in the locker room of the

Waterbury Police Station on August 24, 2019.

### B.  Sergeant Lanese and Captain Ponzillo

The plaintiff does not mention either Sergeant Lanese or Captain Ponzillo by name in the

body of the complaint.  To recover money damages under section 1983 from these municipal

defendants in their individual capacities, the plaintiff must demonstrate their "personal

involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d

133, 138 (2d Cir. 2013).  Personal involvement of a government official is not established "by

reason of [the official's] supervision of others who committed the violation." *Tangreti v.

Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020).  Rather a plaintiff must instead "plead and prove

the elements of the underlying constitutional violation directly against the official without

relying on a special test for supervisory liability."  *Id.* at 618.  A police officer is personally

involved in the use of excessive force if he or she either: (1) directly participates in an assault; or

(2) was present during the assault yet failed to intercede on behalf of the victim even though he

had a reasonable opportunity to do so.  *Demosthene v. City of New York*, 831 F. App'x 530, 535

(2d Cir. 2020) (summary order) ("It is axiomatic that claims under § 1983 for use of excessive

force or failure to intervene require personal involvement to trigger liability.") (citing *Patterson

v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004)); *Anderson v. Branen,* 17 F.3d 552, 557

(2d Cir. 1994) (A police officer has an affirmative duty to intercede when excessive force is

being used by other officers if there is "a realistic opportunity to intervene to prevent the harm from occurring.").

Even if the Court was to assume that the sergeant, who with two other officers, transported the plaintiff back to the police station after he had received medical treatment at the Waterbury Hospital on August 24, 2019, was Sergeant Lanese, the conduct described does not rise to the level of a violation of the plaintiff's federal constitutional rights.  ECF No. 1 at 15 ¶ 26.  The plaintiff has asserted no facts to suggest that either Sergeant Lanese or Captain Ponzillo was present during or directly involved in the alleged use of force against him on August 24, 2019 or otherwise violated his federally or constitutionally protected rights.  The fact that these defendants may have been supervisors of Detectives Schamaling and Rivera is insufficient to establish their direct personal involvement in the alleged use of excessive force.  *See Tangreti*, 983 F.3d at 619.  Accordingly, all claims against defendants Lanese and Ponzillo are dismissed without prejudice as lacking an arguable factual or legal basis.  *See* 28 U.S.C. § 1915A(b)(1).

### C.    City of Waterbury

The plaintiff lists the City of Waterbury as a defendant in his description of parties but does not list the City in the caption on the first page of the complaint.  As such, the City is not a defendant in this action.  *See* Rule 10(a), Fed. R. Civ. P. ("Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties. . . .").  Even if the Court were to consider the City as a defendant, there are no facts to state a plausible claim against it.

Congress did not intend municipalities to be held liable under § 1983 unless action pursuant to an official municipal policy caused a constitutional injury.  *Monell v. Department of*

*Social Services of City of New York*, 436 U.S. 658, 691 (1978).  To prevail on a claim against a municipality under § 1983 based on the actions of a public official, the plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element reflects the notion that "a municipality cannot be made liable under Section 1983 for acts of its employees by application of the doctrine of *respondeat superior.*"  *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986).  The same standard applies to claims against police officers and other municipal employees sued in their official capacities.  *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) (The claims brought against municipal employees in their official capacities are considered claims against the municipality.)

The plaintiff has offered no facts to suggest that Detectives Schamaling and Rivera engaged in the unnecessary or excessive use of force at the Waterbury Police Department on August 24, 2019 pursuant to an unconstitutional policy or custom of the City of Waterbury. Rather, the incident that the plaintiff describes involving the alleged use of excessive force appears to be an isolated occurrence.  *See, e.g.*, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy") (citation omitted); *Gainey v. Pagel*, No. 3:21-CV-43 (SRU), 2021 WL

2400256, at *6 (D. Conn. June 11, 2021) (dismissing official capacity claims against Waterbury police officers because plaintiff "does not set forth any facts that raise a plausible inference that the police misconduct was the product of anything other than the individual actions of the officers at the scene.").

Absent allegations that the actions of Detectives Schamaling and Rivera were the result of a municipal policy or custom, the plaintiff has not stated a plausible claim under *Monell* against the City of Waterbury.  Accordingly, to the extent that the plaintiff intended to assert the Fourth Amendment claim of excessive force against the City of Waterbury and against Detectives Schamaling and Rivera in their official capacities, those claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D.    Waterbury Police Department

Like the City of Waterbury, the Waterbury Police Department is not included in the caption of the complaint but is listed as a defendant in the description of parties.  *See* ECF No. 1 at 1-2.  Because the Department is not listed in the caption, it is not considered to be a defendant in this action.  *See* Rule 10(a), Fed. R. Civ. P.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally or constitutionally protected right.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).  A municipal police department is not an independent governmental entity, but rather "is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function."  *Reed v. Hartford Police Dep't*, No. 3:03-CV-2147 (SRU), 2004 WL 813028, at *2 (D. Conn, Apr. 6, 2004).  As such, a municipal police department is not considered to be a person

under section 1983.  *Id.* ("Other courts addressing this issue concur that a municipal police department is not a "person" within the meaning of section 1983 and not subject to suit.") (collecting cases).  To the extent that the plaintiff intended to name the Waterbury Police Department as a defendant, all claims asserted against it are dismissed under 28 U.S.C. § 1915A(b)(1).

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

**(1)**     All claims asserted against the Waterbury Police Department, the City of Waterbury, Sergeant Lanese, and Captain Ponzillo, and the Fourth Amendment excessive force claim asserted against Detectives Schamaling and Rivera in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).  The Fourth Amendment excessive force claim will proceed against Detectives Schamaling and Rivera in their individual capacities.  Within twenty days of the date of this order, the plaintiff shall file a notice describing the relief that he seeks from Detectives Schamaling and Rivera in their individual capacities.  *See* Fed. R. Civ. P. 8(a)(3).

If the plaintiff can assert facts to demonstrate the direct personal involvement of Sergeant Lanese, and/or Captain Ponzillo, and/or another individual in alleged use of excessive force or in any alleged failure to intervene in the use of force, he may file an amended complaint within twenty (20) days of the date of this order.  The Court cautions the plaintiff that an amended complaint completely replaces the original complaint.  Thus, if he chooses to file an amended complaint, it should include the previously asserted facts regarding the claimed use of excessive force by Detectives Schamaling and Rivera, the new facts demonstrating the direct personal

involvement of Sergeant Lanese, and/or Captain Ponzillo, and/or another officer or detective in the use of force or in the failure to intervene in the use of force, and a request for relief.

(**2**)     The Clerk shall mail a copy of the complaint, this order, and a waiver of service of process request packet to: Detective Eduardo Rivera in his individual capacity and to Detective Jeffrey Schamaling, also known as Jeffrey Schmaling, in his individual capacity at the following address: Waterbury Police Department, 255 East Main Street, Waterbury, Connecticut 06702.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the requests.  If either defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(**3**)     Defendants Schamaling and Rivera shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any additional defenses permitted by the Federal Rules.

(**4**)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the Court.

(**5**)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(**6**)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in

the dismissal of the case.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  Putting a new address on a letter without indicating that it is a new address is insufficient.  If the plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address.  The plaintiff should also notify the attorney or attorneys representing the defendants of his new address.

(**7**)   The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.  The plaintiff is advised that the Program may be used only to file documents with the Court.  Because Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court, the plaintiff must serve discovery requests on defendants' counsel by regular mail.

SO ORDERED at Hartford, Connecticut this 17th day of August, 2021.

_____/s/_____
Michael P. Shea
United States District Judge